Totten, J.,
delivered the opinion of the court.
The bill alleges that defendant is indebted to the plaintiff in the sum of $2,070; that the defendant is a non-resident of the State; that he has property in Davidson county, which he is about to dispose of in fraud of his creditors. The defendant pleads in abatement, that he was not a non-resident at the institution of the suit. Proof was taken, and thereon the chancellor thought proper to sustain the plea, and dismissed the bill. The plaintiff appealed.
The act of 1836, ch. 43, gives the remedy by attachment in chancery where the debtor is a non-resident of the State, and the question is, was the defendant a non-resident at the institution of the suit.
There is no doubt a distinction between residence and domicil. “The domicil is the habitation fixed in any place with an intention of always staying there.” Yattcl, 163. In this sense, he who stops even for a long time in a place, for the management of his affairs, has only a simple habitation there, but has no domicil. Thus, the “Envoy of a foreign prince has not his do-micil at the court where he resides.” Yattel, 164. *422 This is national domicil, in the sense of the public law, by which the national character of the person, and the right of succession to movable, property, are determined. But when used in connexion with subjects of domestic policy: as ■ taxation, settlement, voting, and the attachment law; the term domicil, has a more confined and restricted import, and implies the same as residence: That is, the home or habitation fixed in any place, without a present intention of removing therefrom.
And, therefore, a change of place for a temporary purpose, with an intention to return, is not a change of residence or domicil; though it was otherwise held, “In the matter of Thompson,” 1 Wendell, 44, a case under attachment laws, but in the doctrine of that case, we do not concur.
Counsel for the plaintiff do not designate the defendant’s place of residence. Was it in Pennsylvania or New York?
In 1831, he removed from Chatauga county, New York, his domicil of origin, to Warren county, Pa., and remained there in the mercantile business, until the spring of 1851. Then he went to California, leaving his family at his father’s, in Chatauga county, New York, and returned there in April, 1853. In June, 1853, he came south, and engaged to construct ten miles of the Nashville and Louisville railroad, commencing at Nashville, for the probable sum of $200,000, and to be completed in ’ some two years.
He came to Tennessee, and commenced the work in August — rented a house for a residence, purchased furniture, purchased a servant for a cook, rented a box *423 at the post office, subscribed for a newspaper, opened an account witb a bank, where large sums were deposited and checked out, in his operations. In October he went for his family, who came to Tennessee, a few days after the issuance of the attachment. He left no property or effects in Pennsylvania or New York. His entire funds and interests, so far as we can see, were here: His statement to McGhee, that he did not intend to remove his family to Tennessee, is to be considered; but it is also to be observed, that he changed this purpose, when his family was actually removed to. Tennessee.
Now, all the facts and circumstances are to be considered in determining the question of residence. Can it be said that the defendant continued to be a resident of Pennsylvania, or of New York, entitled to the rights and subject to the duties that appertain to such residence? Or, on the contrary, is there not better reason for holding his legal- residence to be in Tennessee?
His family, property, and actual residence were here:. He was engaged in a large transaction, in which he was to be occupied for a considerable time. Is there any thing to prove, that he had a fixed and definite purpose to return to Pennsylvania or New York at its completion? We do not' perceive that there is.
Mr. Story says, that if a person has actually removed "to another place with an intention of remaining there for an indefinite time, and as a place of fixed present domicil, it is to be deemed his place of domi-cil, notwithstanding he may entertain a floating intention to return at some future period. Conflict of Laws, § 46.
*424 It seems to us, that tbe defendant bad no fixed purpose to return; but that his continuance here, or return, or removal to another place, would be governed by future events • and inclination. There was no inducement for his rethrn to New Tort, except that it was the residence of his kindred.
He had no home or property, either there, or in Pennsylvania. If we compare the facts and circumstances which tend to show the residence of the defendant, at any of the places designated, it is clear that they decidedly preponderate in favor of the residence in Tennessee.
It is not necessary that all the facts which usually attend the residence of a person, should exist in the same case, in order to ascertain and fix the legal residence.
And where the facts and circumstances are inconclusive in their nature, we must be governed by the best indications they afford, and may be aided in coming to a proper conclusion, as to the legal residence, by comparing the claims and pretensions of the several places in question. Moore vs. Wilkins, 10 New Hamp., 452. 1 American Leading Cases, 708.
Considering the case by this test, we have seen that the facts and circumstances strongly preponderate in favor of the residence in Tennessee.
Upon the whole, we are of opinion that the defendant was not a non-resident, in the sense of the attach-. ment laws, at the institution of the suit.
The decree of the chancellor is affirmed.